**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANTHONY JONES,

                              Plaintiff,

        - v -                                          Civ. No. 9:05-CV-1438
                                                                (DNH/RFT)

GLENN S. GOORD, *Commissioner*; J. RUSHFORD, *Sergeant*;
MICHAEL ALLARD, *Superintendent*; RON BOYEA,
*Supervisor of Inmate Grievance Program*; THOMAS G. EAGEN,
*Director, IGP*; JOHN DEMARS, *Deputy Superintendent of Programs*;
LUCIEN J. LECLAIRE, *Deputy Commissioner*; D. ROCK,
*Deputy Superintendent of Security*,

                              Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

ANTHONY JONES
Plaintiff, *Pro Se*
221 Linden Blvd.
Apt. F-6, Building A
Brooklyn, NY 11226

HON. ANDREW M. CUOMO                       DAVID FRUCHTER, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorney for the Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

   *Pro se* Plaintiff Anthony Jones brings this Complaint, pursuant to 42 U.S.C. §§ 1983 and

1985, alleging Defendants violated his constitutional rights while he was housed at Franklin

Correctional Facility.  Specifically, Jones claims that the Defendants conspired to violate his First,

Eighth, and Fourteenth Amendment rights.  Dkt. No. 1, Compl.  The Defendants have filed a Motion

for Summary Judgment pursuant to FED. R. CIV. P. 56,[1] which the Plaintiff opposes.  Dkt. Nos. 51

& 60.  For the reasons that follow, it is recommended that the Defendants' Motion be **granted in**

**part** and **denied in part**.

## I.  DISCUSSION

### A.  Standard of Review

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of

law."  The moving party bears the burden to demonstrate through "'pleadings, depositions, answers

to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no

genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on

the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has,

in accordance with local court rules, served a concise statement of the material facts as to which it

contends there exist no genuine issues to be tried, those facts will be deemed admitted unless

properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d

Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts

showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials"

of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d

---

[1] Plaintiff failed to submit a Statement of Material Facts pursuant to N.D.N.Y.L.R. 7.1, therefore, in accordance with that rule, the Defendants' Statement of Material Facts are deemed admitted.  *See* N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." (emphasis in original)).  However, Defendants' own 7.1 Statement, which consists of seven paragraphs, does little to shed light on the relevant facts not in dispute for the entirety of Plaintiff's claims.  *See* Dkt. No. 51, Defs.' Mot. for Summ. J., 7.1 Statement.

282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d at 874 and *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).

Nevertheless, a plaintiff may seek to bring a § 1983 action for supervisory liability

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

### 1. *Defendant Goord*

Plaintiff alleges that he sent several letters to Defendant Goord contending that his rights were being violated. Compl. at ¶¶ 1 & 47. By his Declaration, Goord swears that he never personally reviewed any of the letters Plaintiff sent to him. Dkt. No. 51-5, Glenn Goord Decl., dated June 10, 2008, at ¶ 3. Goord avers that during the time period relevant to Plaintiff's claims, he received several thousand letters per year as DOCS Commissioner. Due to the volume of letters received, secretaries were assigned the duty of reading them and determining to whom a letter should be forwarded. The official to whom the letter was forwarded would then have the duty to respond. *Id.* at ¶ 4. Plaintiff's allegations confirm that the responses he received to the letters sent

to Goord were from other officials.  Compl. at ¶¶ 1, 8, 9, 11, 14, 17, 45, 46, & 50.

Therefore, to the extent Plaintiff's claims against Goord are based on the letters he sent, it is recommended that those claims be **dismissed**.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (no personal involvement when DOCS Commissioner forwarded plaintiff's letter to a staff member); *Swindell v. Supple*, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3, 2005) ("[A]ny referral by Goord of letters received from [plaintiff] to a representative who, in turn, responded, without more, does not establish personal involvement.").

### 2. *Defendant Eagen*

In his Complaint, Plaintiff makes reference to Defendant Thomas Eagen regarding complaints he submitted through the Inmate Grievance Program ("IGP") and responses he received to those complaints.  Compl. at ¶¶ 18, 39, 40-41, & 56-57.

By his Declaration, Defendant Thomas Eagen states that from August 1994 to January 1998 he was the Assistant Director of the IGP, and was Director of that program from January 1998 through April 2007.  Dkt. No. 54, Thomas G. Eagen Decl., dated June 18, 2008, at ¶ 1.  As Director of the IGP, Eagan "was the custodian of the records maintained by the Central Office Review Committee (CORC), which is the body that renders final administrative decisions" under the IGP pursuant to N.Y.COMP. R. & REGS. tit. 7, § 701.7.  *Id.* at ¶ 3.  Eagen states that pursuant to N.Y. COMP. R. & REGS. tit. 7, § 701.6(B), he was not a voting member of CORC, but signed all CORC dispositions in his administrative capacity as IGP Director.  *Id.* at ¶¶ 4-5.

Plaintiff has pointed to no additional evidence that Eagen participated in any alleged unconstitutional act and Eagan's only alleged personal involvement is based upon his signing of CORC's administrative decisions.  Therefore, Plaintiff's claims regarding Eagen's responses to

Grievances he filed and appealed should be **dismissed** for lack of personal involvement.  *See H'Shaka v. Drown*, 2007 WL 1017275, at *17 (N.D.N.Y. Mar. 30, 2007) (finding Eagen was not personally involved just because he signed CORC determinations).

### 3.  *Defendant Rock*

Plaintiff's only reference to Defendant D. Rock in the Complaint is that "[o]n April 30, 2004, plaintiff again requested to attend religious services, and [Rock] responded, after the service completion that plaintiff does not need permission to attend services."  Compl. at ¶ 53.  Thus, Plaintiff has not alleged that Rock was personally involved in any unconstitutional or otherwise improper conduct.  Therefore, it is recommended that Plaintiff's claims against Rock be **dismissed**.

### 4.  *Defendant Demars*

Plaintiff's only claim against Defendant John R. Demars is that "[o]n June 13, 2005, plaintiff started submitting requests to Deputy Superintendent Demars . . . for special access to the Law Library, on a weekly basis.  The plaintiff was finally given special access on July 3, 2005, after submitting his third request."  Compl. at ¶ 48. Thus, Plaintiff has not alleged that Demars was personally involved in any unconstitutional or otherwise improper conduct.  To the extent Plaintiff claims that Demars delayed in granting Plaintiff special access to the law library, such claim fails to allege a constitutional violation because Plaintiff has not identified any civil claim that was actually prejudiced as a consequence of the delay. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (plaintiffs must show actual injury to state a viable claim based on access to the courts). Therefore, it is recommended that Plaintiff's claim against Demars be **dismissed**.

## C.  First Amendment Claims

### 1.  *Free Exercise of Religion*

Plaintiff claims that on November 11, 2004, he was told he could not participate in Ramadan "because the facility policy does not allow you to go to both the Law Library [] and Ramadan." Compl. at ¶ 22.  Plaintiff also alleges that he was deprived of his Ramadan meal on that date. Plaintiff claims that he was forced to "choose between his religion and access to the Courts." *Id.* at p. 12, Second Cause of Action.

The record shows that Plaintiff submitted a Grievance regarding not being allowed to leave the Law Library on November 11, 2004 to attend Ramadan services.  Dkt. No. 51, David Fruchter, Esq., Decl., dated June 11, 2007, Ex. O, Grievance, dated Nov. 11, 2004.  The response of the Inmate Grievance Resolution Committee ("IGRC") was a statement that Plaintiff "should be allowed to go to the law library at a different time so it would not infringe upon his religious beliefs and access to the courts." *Id.*, IGRC Resp., dated Nov. 22, 2004.  On appeal, the Superintendent stated that "[u]nder normal conditions an inmate who is participating in Ramadan and who is programmed during the a.m. and p.m. modules would be advised to access the Law Library during his two days off." *Id.*, Sup't Decision, dated Dec. 10, 2004.  The decision also noted that "Muslim inmates are allowed to attend Friday Juma Services regardless of their program assignment," and "[i]nmates who are participating in Ramadan may be given special access to Law Library, if they can demonstrate that special access during Ramadan is necessary to meet a court order deadline." *Id.*  Plaintiff appealed that decision as well, stating that "provisions should be made for the RAMADAN participants to have access at the 1:00 p.m. law library opening regardless of court deadlines." CORC denied the appeal, stating that "the facility provides adequate access to the Law Library and

Ramadan services for inmates who have a need to access the Law Library." *Id.* at CORC Decision, dated Jan. 12, 2005.

In a claim based on the right to freely exercise one's religion under the First Amendment, a prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006). "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Id.* at 275 (internal quotation marks and citations omitted).

A review of the Complaint and the aforementioned exhibits in the record makes clear that Plaintiff is challenging a policy that forces inmates who do not have library time during the first two modules of the day and have Ramadan service and dinner during the evening, to choose between going to the law library and attending the Ramadan service in the evening during the month of Ramadan. Compl. at ¶ 60 ("[T]he defendant's rule, or regulation is not necessary . . . in regards to practicing plaintiff's Religion, and having adequate use of the Law Library."). In *Salahuddin v. Goord* an inmate made an identical claim before the Second Circuit Court of Appeals. 467 F.3d at 270. In that case, the Second Circuit held that summary judgment was inappropriate because the defendants did not "dispute that the denial substantially burdened [the plaintiff's] religious exercise," and nor did they "even argue that they [were] entitled to judgment as a matter of law because they have a legitimate penological reason for [the] denial." *Id.* at p. 278.

In this case, the Defendants' submissions suffer from the same infirmities as those in *Salahuddin*. Defendants do not dispute that Plaintiff's freedom to exercise his religion was substantially burdened, nor do they offer any justification for the apparent Catch-22 situation in

which Plaintiff found himself.  Rather, Defendants refer the Court to the record without any additional legal analysis, perhaps assuming incorrectly that the Court will make legal arguments on their behalf.  *See* Dkt. No. 51, Defs.' Mem. of Law at p. 8 (stating, without more, that "[a] review [of documents submitted with their Motion] makes it clear that plaintiff's rights were not violated."). The Court will engage in no such impropriety.  There may well be an array of valid penological justifications for the policy in question, but the Court will not presume their existence.

The policy at issue appears to have been promulgated by the former-Deputy Superintendent of Programs, W.D. Barkley,[2] not DOCS or Commissioner Goord.  Fruchter Decl., Ex. O, Mem. dated Dec. 28, 1998.  The policy was upheld by Defendant Superintendent Allard in his rejection of Plaintiff's Grievance.  *Id.*,Sup't Decision, dated Dec. 10, 2004.  Plaintiff does not allege, and there is no evidence on the record, that Defendant Deputy Superintendent of Programs John Demars had anything to do with the policy or its enforcement.  *See supra* Part II.B(4).

Therefore, it is recommended that the Defendants' Motion be **denied** on this claim as against Defendant Allard only.[3]

## 2. *Retaliation*

Plaintiff alleges that Defendant Boyea, the IGP Supervisor, took numerous actions against him in retaliation for Plaintiff's filing Grievances related to Defendants Rushford's and Boyea's actions on the IGRC.  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation

---

[2] The former Deputy Superintendent of Programs, W.D. Barkley, is not a named Defendant in this action.

[3] However, as noted later, Defendant Allard has not been properly served with process.  *See infra* Part I.G.

- can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted).  Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded).  Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. August 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary

*-10-*

firmness from exercising . . . constitutional rights.'"  *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting

*Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)) (emphasis in original).  This objective test will

apply even though a particular plaintiff was not himself deterred.  *Id.*  If the plaintiff can carry that

burden, the defendants will still be entitled to summary judgment if they can show, by a

preponderance of the evidence, that they would have taken the same action in the absence of the

prisoner's First Amendment activity.  *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999);

*see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d

Cir. 1994).

 Plaintiff alleges that in retaliation for filing a Grievance against Rushford on May 12, 2005,

Boyea (1) ordered Plaintiff and the other inmate representatives to report to the IGP office every

day, Compl. at ¶ 30, and (2) filed a false Misbehavior Report against Plaintiff for which he was

ultimately found guilty, *id.* at ¶¶ 32-33 & 35-36.[4]

At the first step in our analysis, it is clear that both the filing of grievances and participation

as an inmate grievance representative is conduct protected by the First Amendment.  The Supreme

Court has noted that the right to petition government for redress of grievances is "among the most

precious of the liberties safeguarded by the Bill of Rights."  *See United Mine Workers of Am., Dist.*

*12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967).  The Second Circuit has held that within

the prison context, "inmates must be 'permit[ted] free and uninhibited access . . . to both

*administrative and judicial* forums for the purpose of seeking redress of grievances against state

officers.'"  *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d 188, 191 (2d

---

[4] Plaintiff also alleges that Boyea improperly forced him to change an IGRC hearing recommendation, Compl. at ¶ 40, and subjected him to a "hostile environment," *id*. at ¶ 47, though Plaintiff makes no indication that said actions were done in retaliation against him.

Cir. 1976)) (emphasis and alterations in original).  Moreover, we have previously held that serving as a grievance committee representative is constitutionally protected conduct.  *Gill v. Riddick*, 2005 WL 755745, at *10 (N.D.N.Y. Mar. 31, 2005).  Therefore, we find that Plaintiff was engaged in constitutionally protected activity while participating as an inmate grievance representative and when filing Grievances.

With respect to the claim that Boyea filed a false Misbehavior Report against Plaintiff, Boyea simply and singularly states that Plaintiff "was found guilty of the charges," but does not explain the circumstances surrounding the issuance of the Misbehavior Report, nor does he provide evidence as to the grounds for the decision against Plaintiff at the Disciplinary Hearing.  Therefore, it is recommended that summary judgment be **denied** on this claim.

Regarding Plaintiff's claim that Boyea made Plaintiff and other inmates report to the IGP office every day, Boyea states that he ordered such requirement "because of the needs of the IGP, not because of any grievance filed by Plaintiff."  Dkt. No. 51, Ronald Boyea Decl., dated June 11, 2008, at ¶ 6.  Even assuming Boyea's order was motivated by retaliatory animus, such order cannot be considered "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d at 353.  Plaintiff does not allege that he suffered any negative consequences as a result of Boyea's order, nor are any self-evident based on our review of the record.  We note that IGRC inmate representatives are elected by their peers and serve for terms of six months, and moreover, "[t]he inmate representative's position is a full-time assignment unless otherwise authorized in writing by the Director, IGP."  Boyea Decl., Ex. A,  DOCS Directive 4040 at IV(B) & (D).  Therefore, because Plaintiff failed to allege that Boyea took an adverse action against him, the Court recommends that

*-12-*

this claim be **dismissed** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See, e.g.*, *Zimmerman v. Burge*, 2008 WL 850677, at *7 (N.D.N.Y. Mar. 28, 2008) (noting that "even where a defendant has not requested dismissal based on a failure of the plaintiff to state a claim upon which relief may be granted, a district court may, *sua sponte*, address whether a pro se prisoner has failed to state a claim[.]") (citing 28 U.S.C. § 1915(e)(2)(B)(ii)).

### 3.  *Access to the Courts*

Plaintiff alleges that he was "scheduled to participate in a[n] electronic testimony hearing with the New York City Family Court on October 7, 2004," but that the hearing was rescheduled for December 6, 2004.  Plaintiff states that the "New York City Family Court did inform the facility staff of the cancellation verbally over the telephone on that date, as well as by notice addressed to plaintiff in care of the facility[,] [h]owever, plaintiff was not allowed to participate on December 6, 2004, and the plaintiff's petition was dismissed."  Compl. at ¶ 26.

To state a claim for denial of access to the courts, a plaintiff must allege that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury.  *Lewis v. Casey*, 518 U.S. at 353; *Cusamano v. Sobek*, 2009 WL 211155, at *50 (N.D.N.Y. Jan. 26, 2009). In this case, Plaintiff has failed to allege that any Defendant acted deliberately and maliciously against him, and furthermore, has failed to allege that any Defendant was personally involved in the alleged denial of his access to the courts.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983").  Therefore, it is recommended that this claim be **dismissed**.

**D.  Due Process Claims**

1. *IGRC*

Plaintiff alleges he was improperly denied the opportunity to participate as an inmate grievance representative on the IGRC on a part-time basis, and was thereby forced to resign from his representative position.[5]  Compl. at ¶¶ 15 & 17-21.  To the extent Plaintiff is asserting that he had a constitutional right to serve as a grievance committee representative, that claim should be **dismissed** because inmates do not have any constitutional right to the job of their choice.  *See, e.g., Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("New York law does not give a prisoner any statutory, regulatory or precedential right to his prison job." (internal quotation marks and citation omitted)).

2. *Predisposition Confinement*

Plaintiff alleges that he was improperly held in confinement for two days because he was not credited with two days he spent in confinement prior to the disposition at his disciplinary hearing.  Compl. at ¶¶ 36, 44, & 46.  Even assuming Plaintiff's allegations to be true, improper confinement for a period of two days does not amount to an "atypical and significant hardship," and therefore Plaintiff had no liberty interest in remaining free from that two-day confinement.  Accordingly, Plaintiff fails to state a valid due process claim.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (30-day confinement does not create a liberty interest); *see also Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (12 days predisposition confinement did not constitute an atypical hardship).  Therefore, it is recommended that this claim be **dismissed.**

---

[5] Plaintiff does not allege that this denial was a retaliatory act.

**E.  Conspiracy Claims**

Plaintiff alleges that the Defendants conspired to violate his First, Eighth, and Fourteenth Amendment rights.  Compl. at p. 12, Causes of Action.  It is appears that Plaintiff asserts his conspiracy claims under § 1983 or § 1985.  Compl. at p. 1.  Therefore, we will analyze his claims under both standards.

The third subsection of 42 U.S.C. § 1985, which is the only part of this statute applicable to the claims made in this case, states, in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the Untied States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with "(3) an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted).  "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dept. of Corr. Servs.*, 115 F. Supp. 2d 307 (N.D.N.Y. 2000) (citations omitted).

In this case, Plaintiff has failed to allege that he is a member of a class that has been

**-15-**

discriminated against.  Therefore, to the extent his conspiracy claims were brought pursuant to 42

U.S.C. § 1985, they fail to state a claim upon which relief could be granted, and it is recommended

that such claims be **dismissed**.  *See Lewis v. Goord*, 2008 WL 902179, at *3 (N.D.N.Y. Mar. 31,

2008) (dismissing a § 1985 claim when Plaintiff failed to allege racial or class-based animus)

(citation omitted).

   To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement

between two or more state actors or a state actor and a private party; (2) to act in concert to inflict

an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.

*Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).

   Plaintiff offers no evidence of an agreement between the Defendants to conspire against him.

In fact, his claims against the Defendants are diffuse and often not at all interrelated.  For example,

Plaintiff alleges that the Defendants collectively conspired to violate his right to participate in

religious activities, and also claims that the Defendants collectively conspired to deprive him of

adequate medical treatment and to retaliate against him.  Plaintiff makes no distinction as to which

Defendants were involved in which alleged conspiracy.  In the absence of any evidence supporting

the above theory, we do not see how any reasonable jury could conclude that an agreement to

conspire against Plaintiff existed between the  Defendants.  *See Porter v. Selsky*, 287 F. Supp. 2d

180, 187 (W.D.N.Y. 2003) (granting summary judgment when plaintiff failed to adduce any facts

of an agreement to conspire).  Thus, Plaintiff's conspiracy claims brought pursuant to § 1983 should

also be **dismissed**.

## F.  Remaining Claims

   In his Complaint, Plaintiff makes several conclusory allegations, many of which fail to

mention any named Defendant, and some of which concern grievances and complaints he alleges to have filed.  *See* Compl. at ¶¶ 1-2, 4-6, 24, 31, 37, 42, 47, 49, 51, 57-58, & 61-62.  For example, Plaintiff makes conclusory allegations concerning urinalysis testing, delays in his mail delivery, comments made to inmate barbers, delays in the availability of notary public services, etc.  *Id.* at ¶¶ 7, 24, 42, & 49.  To the extent Plaintiff intended to assert those claims as independent constitutional violations under § 1983, the Court will recommend their **dismissal** *sua sponte* for failure to state a cognizable claim.  *See, e.g., Cusamano v. Sobek*, 2009 WL 211155, at *22 ("[A] district court may, *sua sponte*, address whether a pro se prisoner has failed to state a claim upon which relief may be granted" (citing 28 U.S.C. § 1915(e)(2)(B)(ii) & 1915A(b))).

Plaintiff also makes two claims that he was provided constitutionally inadequate medical care.  First, he alleges that he "submitted a grievance regarding the Dental Departments [sic] failure to treat a abcess [sic], and the long period of time that I have to wait for treatment under normal circumstances."  Compl. at ¶ 12.  Second, he alleges that he submitted a grievance "concerning a facial rash" because he "was not being issued any medication for the problem."  *Id.* at ¶ 23.  These claims are wholly conclusory and fail to allege cognizable constitutional violations under § 1983 because they do not directly or indirectly implicate any of the named Defendants in this action.  *See Bell. Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007) (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level").  Therefore, it is recommended that these claims be **dismissed**.

Finally, Plaintiff alleges that Defendant J. Rushford threatened and verbally harassed him

during a IGRC meeting.[6]  Compl. at ¶ 27.   It is well settled law in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Petway v. City of New York*, 2005 WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005); *Larocco v. N.Y. City Dep't of Corr.*, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001).  Thus, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Moncrieffe v. Witbeck*, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (quoting *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).  Additionally, "threats do not amount to violations of constitutional rights."  *Id.* (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)).  Therefore, it is recommended that this claim be **dismissed.**

### G.  Failure to Serve

There is no indication that Defendant Allard has been properly served.  *See* Dkt. No. 7, Unexecuted Summons.  Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[7]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case

---

[6] Plaintiff does not allege that these actions were taken in retaliation, rather, he asserts that Rushford reacted to a position Plaintiff took regarding a grievance under consideration.  Compl. at ¶ 27.

[7] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

without prejudice as to that defendant. *Id.*

Rule 4(m) provides that if a plaintiff shows "good cause" for the failure to serve the summons and complaint upon a defendant, the court "shall extend the time for service for an appropriate period." In this case, Plaintiff points to a letter from Assistant Attorney General David Fruchter, docketed on April 7, 2006, wherein he states that <u>all</u> of the Defendants have been served and asks for an extension of time to serve a response to the Complaint. Dkt. No. 16, Lt. dated Apr. 7, 2006. Although Fruchter avers that he mistakenly included Allard's name in the list of Defendants he named as having been served, that letter was filed subsequent to the March 16, 2006 docket entry providing notice of the unexecuted summons. Dkt. No. 62, Reply, Fruchter Decl., dated Dec. 9, 2008, at ¶ 4. Given that mistake, and considering also the fact that several of Defendants' subsequent submissions were noted on the docket as being submitted on behalf of Allard as well as the other Defendants, we find that this *pro se* Plaintiff could have reasonably assumed that service had been effected on all Defendants. Therefore, we find that Plaintiff has shown good cause for his failure to serve Allard, and we will afford Plaintiff an **additional sixty (60) days** to serve Allard. **Plaintiff is warned that his failure to serve Allard within sixty (60) days may result in the dismissal of his claims against Allard**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 51) be **granted in part** and **denied in part** as outlined above; and it is further

**RECOMMENDED**, that several of Plaintiff's claims be **dismissed** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as outlined above; and it is further

**RECOMMENDED**, that Defendants Goord, Rushford, Eagen, Demars, Leclaire, and Rock be **dismissed** from this action; and it is further

**ORDERED**, that the Court, *sua sponte*, grants Plaintiff **sixty (60) days** to effectuate service of process on Defendant Allard; and it is further

**ORDERED**, that the Clerk of the Court re-issue a summons for Defendant Michael Allard and forward it, along with a copy of the Plaintiff's Complaint, to the United States Marshal for service; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).


Date:   March 3, 2009
        Albany, New York


RANDOLPH F. TREECE
United States Magistrate Judge

*-20-*